487 P.2d 866

**WEBER BASIN HOME BUILDERS AS-SOCIATION, a corporation, for its builder members and others similarly situated, Plaintiff and Respondent,**

v.

**ROY CITY, a municipal corporation, Defendant and Appellant.**

No. 12325.

Supreme Court of Utah.

July 26, 1971.

Richard H. Thornley, of Froerer, Horowitz, Parker, Richards, Thornley & Critchlow, Ogden, for defendant and appellant.

LaVar E. Stark, of Alsup & Stark, Ogden, for plaintiff and respondent.

CROCKETT, Justice.

Weber Basin Home Builders, land developers, sought a declaratory judgment [1] that an ordinance adopted by Roy City in 1968 increasing its building permit fee by $100 was ultra vires, discriminatory and unconstitutional. There was no dispute as to the facts. Upon the submission of motions for summary judgment by both parties, the court sustained the plaintiff's contentions. Defendant appeals.

Land developers (such as plaintiff) in Roy City are required to pay all of the installation costs of services to property developed, including curb and gutter, sidewalks, sanitary and storm sewer mains, and water mains involved in the development. Separate and apart from this, a building permit is required for each unit constructed. Prior to the enactment of this ordinance the building permit charge for a single family dwelling was a flat fee of $12 plus two cents for each square foot of dwelling and garage or carport. The ordinance added $100 to the flat fee, so that it is now $112.

The City has made no claim either in the district court or here that a major purpose of the increase was to bring the permit fee in line with the costs of regulating building construction. On the contrary, it is conceded that the purpose was to obtain additional money for the City's general fund; and that the money so collected was placed therein prior to the bringing of this suit. The City does contend that the collection of this additional money is necessary to improve its water and sewer systems because of the construction of new homes.

As a prefatory foundation to considering the problem presented in this case it is appropriate to have in mind that there is a distinction between the authority of a city to charge a fee for the granting of a license or a permit to carry on business therein, and the authority to impose a tax.[2] How such exactions should be classified depends upon their purpose. If the money collected is for a license to engage in a

I. Secs. 78-33-1, et seq., U.C.A. 1953.

2. See McQuillin—Municipal Corporations, Vol. 9, Sec. 26.15.

business and the proceeds therefrom are purposed mainly to service, regulate and police such business or activity, it is regarded as a license fee. On the other hand, if the factors just stated are minimal, and the money collected is mainly for raising revenue for general municipal purposes, it is properly regarded as the imposition of a tax, and this is so regardless of the terms used to describe it.[3] In some states where the power granted cities does not expressly authorize the collection of a license fee for the purpose of raising revenue generally, the courts have held that the charge for such licensing must bear some reasonable relationship to the cost of regulating the business so licensed. It is reasoned that even though license fees sufficient to cover such costs are a necessary concomitant of the police power, fees in excess thereof are in reality a form of taxation, which may not be imposed by the city without express authorization of the legislature.[4]

It is to be recognized that there are situations where the ordinance is neither completely fish nor fowl, as coming within either of the above mentioned classifications, but is a hybrid in that it partakes of both. That appears to be the situation found in the ordinance here in question.

It is justified under our Utah law, due to the particular wording of our statute, and previous decisions based thereon.

Sec. 10–8–80, U.C.A.1953, provides:

*License fees and taxes. They* [cities] *may raise revenue* by levying and collecting a license fee or tax on any business within the limits of the city, and regulate the same by ordinance; * * *. All such license fees and taxes shall be uniform in respect to the class upon which they are imposed.

Some years ago in the case of Ogden City v. Crossman[5] in construing a predecessor statute whose relevant parts are the same as Sec. 10–8–80, this court upheld a $5 annual license tax on each telephone within the city against the challenge that it was an illegal attempt to raise revenue under the guise of the police power. The court said:

* * * Under the circumstances, where, by the constitution and statute, express authority is given to raise revenue by levying and collecting a license fee or tax upon any private corporation or business within the limits of the city, and regulate the same by ordinance, *it is held that the municipality is not limited*

---

3. See Best Foods, Inc. v. Christensen, et al., 75 Utah 392, 285 P. 1001, and authorities therein cited.

4. See, e. g., Merrelli v. City of St. Clair Shores, 355 Mich. 575, 96 N.W.2d 144;

Daniels v. Borrough of Point Pleasant, 23 N.J. 357, 129 A.2d 265; generally, 51 Am.Jur.2d, Licenses and Permits, Sec. 113.

5. 17 Utah 66, 53 P. 985.

*to the mere expense of the regulation, but that it may impose a reasonable license tax for the purpose of obtaining revenue necessary to meet the general expenses of such municipality.* But the state [city] could not, under such circumstances, impose a license tax beyond the necessities of the city, nor one so excessive as to prohibit or destroy the occupation or business upon which it is imposed. * * *

Consistent with the rationale of the Crossman case is Davis v. Ogden City [6] wherein we held that Sec. 10–8–80 empowered a city to impose and collect a license fee on the business of practicing law, even though the city is without power to regulate such practice.[7]

As will be seen from the language of Sec. 10–8–80 hereinabove quoted, and the decisions thereon just mentioned, it is not now open to question that in our state a city may impose and collect a license fee on business operated therein, both for the purpose of regulation and of raising revenue for general municipal purposes.

However, whether it be regarded as a license fee, or as a tax, or as a mixture of the two, it cannot be imposed in any such manner as to violate constitutional principles, which include equal and nondiscriminatory treatment and protection under the law.[8]

The critical question here is whether the ordinance in its practical operation results in an unjust discrimination by imposing a greater burden of the cost of city government on one class of persons as compared to another, without any proper basis for such differentiation and classification.[9] It is not to be doubted that each new residence has its effect in increasing the cost of city government; nor that due to the steadily increasing costs of everything, including those involved in rendering such services, the city would have authority to raise the fees charged for such services from time to time. Nevertheless, in that connection, the new residents are entitled to be treated equally and on the same basis as the old residents.

6. 117 Utah 315, 215 P.2d 616, 223 P.2d 412, 16 A.L.R.2d 1208.

7. However, compare Matthews v. Jensen, 21 Utah 207, 61 P. 303, wherein a license imposed on raising and pasturing sheep was stricken down as discriminatory. The court stated, consistent with our holding herein, that "One class of citizens cannot thus be compelled to bear the burdens of government, to the advantage of all other classes."

8. See Secs. 2 and 7, Art. I, Utah Const.; Amdt. XIV, U.S.Const.

9. That the imposition of a license fee upon a class of persons is neither a denial of equal protection of the law, nor discriminatory so long as it applies to all persons of a class and the classification bears a reasonable relation to the purposes of the statute, see State v. Mason, 94 Utah 501, 78 P.2d 920.

 

Similar in principle is the case of *Daniels v. Borough of Point Pleasant*,[10] wherein the New Jersey court in striking down the same kind of ordinance, speaking through Chief Justice Vanderbilt, stated:

> What the Borough of Point Pleasant is attempting to do here is to defray the general cost of government under the guise of reimbursement for the special services required by the regulation and control of new buildings. * * * The philosophy of this ordinance is that the tax rate of the Borough should remain the same *and the new people coming into the municipality should bear the burden of the increased costs* of their presence. This is so totally contrary to tax philosophy as to require it to be stricken down.

■ Under the undisputed facts as presented to the trial court: where the basic flat-fee charge for a building permit was increased in one jump from $12 to $112, which increase admittedly had no relationship to increased costs of the service rendered; and more importantly, where the declared purpose was to raise general revenue for the City, it was his opinion that the increase placed a disproportionate and unfair burden on new households in Roy City, as compared to the old ones, in the maintenance of the City government; and that consequently it was discriminatory and constitutionally impermissible. We are not disposed to disagree with that conclusion. (All emphasis added.)

Affirmed. Costs to plaintiff (respondent).

CALLISTER, C. J., and TUCKETT, HENRIOD and ELLETT, JJ., concur.