CONTINENTAL BANK AND TRUST COMPANY, Trustee, and Lagoon Corporation, a Utah Corporation, Plaintiffs and Respondents,

v.

FARMINGTON CITY, a municipal corporation of the State of Utah, Defendant and Appellant.

No. 15963.

Supreme Court of Utah.

Aug. 28, 1979.

Walter P. Faber, Jr., and David Lloyd of Watkins & Faber, Salt Lake City, for defendant and appellant.

Reed L. Martineau, Merlin K. Lybbert and Paul J. Graf, of Snow, Christensen & Martineau, Salt Lake City, for plaintiffs and respondents.

HALL, Justice:

Appeal from a district court decision that a municipal business license revenue tax levied by Farmington City (hereafter "Farmington") upon Lagoon Corporation (hereafter "Lagoon") is unlawful and unconstitutional. The decision also dismissed a petition submitted by Continental Bank and Trust Company, (as trustee of the estate of Julian M. Bamberger, and executor of the estate of Eloise B. Shott), and Betsy B. Lesser, (an individual), the owners of the Lagoon property (hereafter "owners") for disconnection of the Lagoon property from Farmington.

Lagoon, a principal amusement park in Northern Utah, moved to its present location from Lake Shore in 1896. It leases the property on which it is now located from the owners under an agreement which extends beyond 1990. Only a portion of the park was within Farmington city limits prior to 1971. In that year, at the request of the owners, the remainder of the park was annexed to Farmington.

In 1969, Lagoon established its own security force to supplement the police and security protection afforded it by Farmington, the Davis County Sheriff's Office, and the Utah Highway Patrol. At present, the Lagoon security force is composed of 80 full and part-time seasonal security officers, many of whom are regularly employed by the aforementioned county and state law enforcement agencies. Lagoon's security force has rendered participation from Farmington law enforcement officers within the park minimal, such activity now being generally limited to transport of arrestees to the Davis County Jail. Fines generated from arrests within Lagoon, however, are received by Farmington.

Farmington provides some of Lagoon's culinary water needs, which accounted for 10 percent of the city's water during 1976. In recent years, Farmington has completed, with assistance from Lagoon and Davis County, substantial improvements in its water storage and delivery systems, in an effort to ameliorate fire protection for Lagoon and other parts of the city. Lagoon has also proposed plans for its own water system. That proposal, which would draw on some 35 separate water filings held by Lagoon, would consolidate water rights to draw from a single well in an aquifer presently tapped by Farmington as a principal source.

Farmington does not furnish to Lagoon any of the following services: garbage pickup, curb and gutter, street cleaning or repairs, or street lighting. Sewer service to Lagoon is limited to maintenance of certain lines installed several years ago by Lagoon, extending from its property to the central Davis County sewer district line. All service furnished on that sewer line is billed to Lagoon on a contractual basis.

Public entrances to Lagoon are reached over state or county roads within the Farmington municipal limits with the exception of a pedestrian entrance on the east side of the park which is reached from Lagoon Lane in Farmington.

Farmington operates a city volunteer fire department which, in the event of a fire in Lagoon, would require assistance from Davis County and neighboring communities. The city fire department, however, is under a voluntary contract arrangement with Davis County, under which it is the initial respondent to any needs arising in a geographic area which encompasses Farmington, Lagoon, and surrounding environs.

Lagoon contributes significantly to Farmington's revenue needs through real property tax, business license tax, and state sales tax. The tax burden imposed on Lagoon has risen dramatically in recent years. The level of taxes paid in 1974 was approximately double that paid in 1970. By 1976 taxation had risen by another 89 percent. As a result, the proportionate share of Farmington's total revenue received from Lagoon has nearly doubled in the last five years.

Commencing in January of 1976, Farmington, (at the behest of the City Finance Committee), began plans for the imposition of a license fee tax on "amusements" within the city. It is abundantly clear that the tax was, from the outset, intended for, and tailored to, Lagoon alone. The figure initially proposed was 5 percent of Lagoon's gross revenues, but subsequent amendments reduced the figure to 2 percent. The proposed tax had no regulatory goals; its purpose was purely revenue-producing.

Lagoon filed its complaint and petition on May 18, 1976. The matter came to trial on June 27, 1977, with judgment thereon being entered on July 7, 1977. The trial court held that Lagoon was not a proper class upon which Farmington could levy a tax. It furthermore held that the license fee, as applied, was unconstitutional and illegal, in that it was unreasonably discriminatory against Lagoon and its patrons, unreasonably oppressive both on its face and in its application, unequal in its impact upon the plaintiffs and patrons of Lagoon, whimsical and arbitrary in theory and in practical effect, a special law. The fee was held to be an imposition upon Lagoon and its patrons of an unfair burden of the costs of government, an excise tax prohibited by Article XIII, Section 3, of the Utah Constitution, a tax which was not uniform in its operation and effect, excessive, oppressive, unreasonable and discriminatory, an abuse of the taxing power vested in the defendant and its officials and destructive in its impact upon Lagoon. The trial court also disallowed the owner's petition for disconnection of the Lagoon property from Farmington, on the grounds that such disconnection was not required by justice and equity.

Farmington appeals from the judgment rendering the tax ordinance invalid, and the owners appeal from the denial of petition for disconnection.

Farmington does not challenge the trial court's findings of fact. It requests that we reverse the finding of unconstitutionality and illegality "as a matter of law." Farmington urges that (1) the Utah Constitution confers plenary taxing power for municipal purposes upon municipal corporations by means of legislative enactment, (2) the Utah legislature has invested municipal corporations with the power to levy license and occupation taxes for the purpose of raising revenue, (3) a municipal license tax on "amusements" creates a valid and reasonable classification for taxation purposes, and (4) the ordinance, as applied in Farmington, taxes all "members" of the class (i. e., Lagoon) equally and uniformally, thus satisfying all statutory and constitutional requirements.

Article XIII, Section 5, of the Utah Constitution enables the legislature to vest in municipal corporations the power to assess and collect taxes for any and all municipal corporate purposes. Pursuant to this grant, the legislature enacted U.C.A., 1953, 10–8–80, which permits municipal corporations to "raise revenue by levying and collecting a license fee or tax on any business within the limits of the city, and regulate the same by ordinance." That such a licensing ordinance may extend to the type of business affected in the present case is clear under U.C.A., 1953, 10–8–39, which permits a municipal corporation to "license, tax and regulate . . . shows and amusements." Moreover, the license fee need not be for a strictly regulatory purpose, nor limited in amount to that sufficient for carrying out proper policing of the businesses so licensed; the licensing device may be used as a revenue-producing provision.[1] Such taxation ordinances are not subject to the requirements of Article I,

1. U.C.A., 1953, 10–8–80; *Ogden City v. Crossman*, 17 Utah 66, 53 P. 985 (1898).

Section 24 of the Utah Constitution, which calls for uniform operation of all laws of a general nature. Article XIII, Section 12, has been interpreted as precluding the application of the uniformity clause to taxes based on income, occupation, licenses or franchises.[2] Consequently, legislative discretion and judgment in the area of municipal taxation is given great deference by a reviewing court.[3]

Such deference, however, does not allow unfettered discretion. U.C.A., 1953, 10–8–80 requires that "all such license fees and taxes shall be uniform in respect to the class upon which they are imposed." Nor is the municipal corporation at liberty to arbitrarily define a "class" for taxation and then claim to tax it uniformly; such an approach would not only totally emasculate the effect of the uniformity provision, but would fall wide of constitutional requirements of equal protection and due process.[4] A valid classification, for statutory and constitutional purposes, must include all persons similarly situated,[5] and must bear a reasonable relation to the purposes to be accomplished by the act. Where some persons or transactions excluded from the operation of the law are, as to its subject matter, in no differentiable class from those included in its operation, the law is discriminatory in the sense of being arbitrary and unconstitutional.[6] The issue in the present case, then, may be reduced to an inquiry whether or not the licensing ordinance passed by Farmington and assessed against Lagoon represents such an improper classification that its operation becomes discriminatory, arbitrary, and an abuse of the taxing power. Such an inquiry must necessarily take into consideration all the circumstances under which the ordinance was enacted and under which it would operate, since reasonableness of classification cannot be determined by reference to a few well-chosen legal generalities, and a classification which is perfectly reasonable in one context may be patently unreasonable in another.[7]

The first consideration in the present case is the scope of the ordinance's application. Viewed in the abstract, its language sweeps broadly. Almost any type of amusement, entertainment, recreational facility or business is included. As it happens, however, Lagoon is, at present, the only qualifier within Farmington's city limits. Whether that situation will change in the future, as Farmington expands and develops, cannot be relevant to a consideration of reasonable classification in the present. Lagoon presently shoulders the burden alone, and has no guarantee that others will share it in the future.

There are cases where a single, unique business entity has constituted a proper class for taxation purposes.[8] In fact, this Court has specifically sustained the idea that a classification which comprises a single business entity does not per se render the classification unreasonable.[9] As indicated above, however, numerosity, divorced from other circumstances, cannot establish the propriety or impropriety of the classification involved.

The ordinance here at issue is a general revenue provision. This fact is specifically stated in subsection H of the ordinance itself. "This section is enacted solely to raise revenue for municipal purposes and is not intended for regulation and is not a

2. *Salt Lake City v. Christensen Co.*, 34 Utah 38, 95 P. 523 (1908).

3. *Davis v. Ogden City*, 117 Utah 315, 215 P.2d 616 (1950).

4. Article I, Sections 1 and 7, Utah Constitution; Amendment 14, Section 1, United States Constitution; *Weber Basin Home Builders Ass'n v. Roy City*, 26 Utah 2d 215, 487 P.2d 866 (1971).

5. *Davis v. Ogden City, supra; Slater v. Salt Lake City*, 115 Utah 476, 206 P.2d 153 (1949).

6. *State v. Mason*, 94 Utah 501, 78 P.2d 920 (1938).

7. 5 McQuillin Mun.Corp. (3d Ed.), Section 19.-14, page 434.

8. See e. g. *Salt Lake City Lines v. Salt Lake City*, 6 Utah 2d 428, 315 P.2d 859 (1957).

9. *Salt Lake City v. Utah Light & Railway Co.*, 45 Utah 50, 142 P. 1067 (1914).

substitute for other regulatory ordinances." The trial court specifically found that the amount of revenue anticipated from license fee bore no relation to the costs of services provided Lagoon. Farmington spoke extensively for the need of upgraded services to Lagoon, indicating an intent on the part of the city to apply revenues to that end. Beyond very general reference in the preamble of the ordinance, however, no dedication of revenue funds to that purpose is made. Moreover, evidence appears in the trial transcript tending to indicate that the tax was imposed with an eye to municipal purposes of a much broader sweep. It bears little discussion that the carving out of a single business entity as the "class" to be taxed bears little reasonable relationship to the objectives of a general revenue measure. The effective result of the ordinance, as presently constituted, is the imposition upon a single enterprise of a tax, the revenues of which could at the discretion of the city, be devoted to any municipal corporate purpose.

Closely related is the question of the oppressiveness of the licensing tax imposed by Farmington upon Lagoon. Whenever a class is singled out for taxation, the amount of which is unduly burdensome, the question of abuse of taxing power is raised.[10] Evidence is uncontradicted that Lagoon operates on a low margin of profit, traditionally pays no dividends, and has recently indebted itself in the installation of Pioneer Village on the east end of the park. Despite these facts, Farmington has seen fit to impose a tax on gross receipts, which makes no provision for high overhead. Moreover, the license tax adds to an already stiff tax burden imposed on Lagoon. Were the license tax permitted to stand, Lagoon would sustain a staggering ten-fold increase in taxation since 1975. In none of the cases to which Farmington directs us, where a tax of 2 percent or more of gross income

has been sustained, was such a tax load already in existence.

We are not unmindful of the fact that the action of Farmington in this matter is entitled to broad deference by a reviewing court, nor of the fact that any legislative enactment is entitled to a presumption of constitutionality.[11] As was stated by this Court in the case of *Salt Lake City v. Christensen Co.*, supra, "[w]here neither the Constitution nor the statute imposes absolute restrictions, the courts may not arbitrarily impose any unless it clearly appears that the tax imposed is oppressive, or clearly and unreasonably discriminatory, and thus is an abuse of the [tax paying] power." The conclusion is inescapable that a situation such as the one at hand, where a municipality imposes a potentially crippling tax on a single business for the benefit of the community as a whole, coupled with vague promises of improved services which the business has not been guaranteed, and to a large extent, does not need, presents such a case of abuse of taxing power. We therefore hold the Farmington license tax invalid. As such, we need not reach the question of its status as an excise tax in violation of Article XIII, Section 3 of the Utah Constitution, nor its status as a special law, violating Article VI, Section 26 of the Utah Constitution.

The owners' cross-appeal for review of the trial court's refusal to grant disconnection of the Lagoon property from Farmington presents a different question. That petition, submitted according to the provisions of U.C.A., 1953, 10–4–1,[12] called for disconnection of the Lagoon property due to its compliance with the criteria set forth in U.C.A., 1953, U.C.A., 10–4–2,[13] in that (1) city services to Lagoon were few and unneeded, (2) Lagoon has the capacity to furnish or obtain its own services, (3) disconnection would not unduly disrupt the symmetry of the city, (4) disconnection would

---

**10.** *Ogden City v. Crossman, supra; Salt Lake City v. Christensen Co.,* supra; *Cache County v. Jensen,* 21 Utah 207, 61 P. 303 (1900).

**11.** *State v. Nielsen,* 19 Utah 2d 66, 426 P.2d 13 (1967).

**12.** Now U.C.A., 1953, 10–2–501.

**13.** Now U.C.A., 1953, 10–2–502.

not have significant adverse impact on the finances of Farmington, and (5) removal of Lagoon from the city is warranted due to the unique character of the land involved.

■ The owners urge that, this being a matter in equity, this Court should undertake an independent evaluation of the findings of the trial court. We are, as in the past, unwilling to pursue so radical an approach. Where a trial court has ruled on the justice and equity of disconnection of an area from a city, this Court will not disturb the findings unless they are clearly erroneous.[14]

The following are the findings of the trial court supporting its decision to deny owners' petition. First, Farmington, while it has primary police jurisdiction over Lagoon, is free to enlist the assistance of the Davis County Sheriff's Office and the Utah Highway Patrol. Disconnection would thus not improve Lagoon's access to law enforcement officers, in those situations where its own security force is inadequate. Second, Lagoon has, in the past, drawn substantially on the city for its culinary water needs. Lagoon's recent proposal of an alternative water system would draw from sources already tapped by Farmington, and would entail the use of extensive rights of way within the city. Third, traffic problems created by the park within the city and more particularly those existing around the east entrance to Lagoon, would be unaffected by the disconnection proposal. Fourth, proposals by the state fire marshall for upgrading of Lagoon's fire protection system include the suggestion that a six-inch main at the south end of the park be looped to an existing city main along the state's street. Fifth, the Farmington fire department is, and would remain regardless of disconnection, primarily responsible for responding to emergencies in the Lagoon area. Sixth, Lagoon is constantly in need of access to and rights-of-way in Farmington for utility services, and would so remain regardless of disconnection. Seventh, Farmington is anticipating expansion west-

ward past the Lagoon resort. Such expansion would create an asymmetrical city layout. Moreover, a corridor would need to be left open, extending westward from Lagoon to Farmington's western most boundary, to avoid the creation of an unincorporated island in the midst of the city, as mandated by U.C.A., 1953, 10–2–402. Eighth, Farmington would not be relieved of any obligation to provide flood control for Lagoon and surrounding areas in the event of disconnection. Ninth, Farmington has become in recent years, increasingly dependent upon Lagoon for tax revenues.

■ The owners assert that "justice and equity" mandate the disconnection of Lagoon from Farmington. An acceptance of the above-enumerated findings of fact tends to dictate otherwise. We find adequate evidence in the record to support the findings of the trial court, and they will not be disturbed upon appeal.

The judgment of the trial court should be and hereby is affirmed. No costs awarded.

MAUGHAN, WILKINS and STEWART, JJ., concur.

CROCKETT, Chief Justice (concurring in part, dissenting in part):

I concur in that part of the decision which affirms the district court's refusal to grant plaintiff's petition to disconnect Lagoon from Farmington City.

But I am unable to agree with the adjudication that the two percent tax upon revenues received by places of amusement within the city is void as being unconstitutional.

The main opinion is commendably clear in its exposition of the issue involved and the principles upon which it should be determined. This is done commencing with reference to Article XIII, Section 5 of our state constitution and the statutory implementation thereof in Sections 10–8–80, U.C.A.1953, which vests municipal corporations with power to assess taxes for municipal purposes and 10–8–39, which empowers

---

14. *In re Layton City*, 27 Utah 2d 241, 494 P.2d 948 (1972); *Kennecott Copper Corp. v. City of*

*Bingham Canyon*, 18 Utah 2d 60, 415 P.2d 209 (1966).

them to "license, tax and regulate . . . shows and amusements."

I am in hearty agreement with the foundational principles stated: acknowledging that it is essential to the proper functioning of city government that elected officials should be allowed a considerable latitude of judgment in carrying out their responsibilities. Consequently, legislative actions of the city are entitled to a presumption of validity and constitutionality, and courts should exercise restraint by not intruding or interfering with a city's enactments unless they are clearly outside the authority granted, or in conflict with constitutional provisions or established law.

It is further pleasing to note and agree with the main opinion's sound observations that the foregoing principles apply specifically in the area of municipal taxation;[1] and that so long as a tax is imposed upon all individuals or businesses which are within a legitimate and similar classification, the fact that only one presently falls within that class does not render the tax invalid as discriminatory.[2]

The disconcerting thing about the main opinion is that it does such an admirable job of setting forth the principles that should govern the situation, and then departs from them in the conclusion it reaches. Its rationalization as to the burdens that are created by imposing the 2 percent tax upon amusements within the city, (which presently happens to fall only on Lagoon) and "adds to an already stiff tax burden" upon a business which operates at a "low margin of profit" may well raise questions as to the good judgment and practicality of Farmington City imposing that tax. But, in my opinion, that does not transgress the powers granted to the city, nor does it rise to any such level that it can properly be characterized as so oppressive and burdensome that the court can declare it to be confiscatory and therefore invalid.

I think there is no basis upon which to justify the court's intrusion into the prerogatives of the governing body by declaring the tax void as being in conflict with any constitutional prohibition or limitation. Accordingly, I would reverse that portion of the district court's judgment.

---

1. See footnotes 3 and 11, main opinion.

2. See footnotes 8 and 9, main opinion.