**UTAH RESTAURANT ASSOCIATION, a Utah non-profit corporation, and Anthony's, Inc., a Utah Corporation dba Anthony's Restaurant, Plaintiffs and Respondents,**

v.

**DAVIS COUNTY BOARD OF HEALTH, Defendant and Appellant.**

**No. 19213.**

Supreme Court of Utah.

Nov. 8, 1985.

Gerald E. Hess, Deputy Co. Atty., Farmington, for defendant and appellant.

Gary E. Atkin, Salt Lake City, for plaintiffs and respondents.

ZIMMERMAN, Justice:

The Davis County Board of Health appeals from a final judgment holding invalid its regulation imposing a permit fee upon food service establishments in Davis County, restraining the Board of Health from imposing any charges pursuant to the regulation and ordering the return of any payments already received. We affirm in part and reverse in part.

In 1980, the Davis County Board of Health ("Board") promulgated the Food Services Establishment Permit Fee Schedule. It imposed fees on restaurants and other establishments providing food service in Davis County. Fees ranged from $15 to $60 per year, depending on the capacity of the establishment. The record suggests that the objective of the measure was to defray some of the costs incurred by the Board in inspecting food service establishments in Davis County.

The validity of the measure was challenged both by the Utah Restaurant Association ("Association"), a nonprofit corporation, the members of which all have a direct interest in Utah's restaurant and food service industry and some of which operate restaurants in Davis County, and by Anthony's, Inc., an Association member operating a restaurant in Davis County. The action was brought both under Utah's De-

claratory Judgment Act, U.C.A., 1953, § 78–33–1 to –13 (1977 ed.), and the Local Health Department Act, U.C.A., 1953, § 26–24–1 to –24 (1984 ed.).

The Association and Anthony's mounted a two-pronged attack on the permit fee regulation. First, they alleged that in enacting the regulation, the Board failed to follow the procedural steps required by the Local Health Department Act. Specifically, they contended that the Board did not make findings of fact or conclusions of law in support of its regulation as required by section 26–24–20(3) of the Act. Second, plaintiffs argued that the Board exceeded its statutory authority in enacting the measure because it was intended not as a legitimate fee to defray the costs of food service inspection, but as a tax to raise general revenues.

The matter was submitted on stipulated facts. The district court found that the measure was invalid because the Board did not follow the statutorily required procedures in adopting it, and that even if the statute had been followed, the regulation would still be invalid because it was in fact an unlawful attempt to levy a tax. On appeal, the Board now challenges both of these conclusions.

Before reaching the merits, several preliminary matters must be considered. Although neither party briefed the questions of jurisdiction or standing, they are matters that we can raise *sua sponte*. *E.g., Heath Tecna Corp. v. Sound Systems International, Inc.*, Utah, 588 P.2d 169, 170 (1978). In the present case, the record raises serious issues both of jurisdiction and standing.

The first question is whether the statutes relied upon by the Association and Anthony's confer jurisdiction upon the district court to review a regulation promulgated by a local health board. Both sections 78–33–2 and 78–33–13 of the Utah Declaratory Judgment Act and section 26–24–20(5) of the Local Health Department Act were relied upon by the parties and the trial court as a basis for jurisdiction. We conclude

that only the Declaratory Judgment Act actually confers jurisdiction.

 The Local Health Department Act, section 26–24–20(5), permits judicial review "of a final determination of the local board." The parties and the trial court apparently concluded that a rule or regulation passed by the Board is such a "final determination." A close reading of the statute and related portions of the Local Health Department Act, however, leads to a contrary conclusion.

A rather detailed explanation is necessary. The Act requires each county to establish a local health department. U.C.A., 1953, § 26–24–4 (1984 ed.). Within the department there is to be a board of health. U.C.A., 1953, § 26–24–9(1) (1984 ed.). The board is authorized to set general rules, regulations, and standards. U.C.A., 1953, § 26–24–20(1) (1984 ed.). The department, on the other hand, is to administer and enforce rules and regulations of, *inter alia,* the board. U.C.A., 1953, §§ 26–24–8, –14(2) to –(6), –14(9) to –(11), –14(19), –24 (1984 ed.). The error of both the district court and the parties in thinking that section 26–24–20(5) confers jurisdiction over the present action is due to the fact that section 26–24–20 is confusingly written and deals with two distinct subjects—rulemaking by a board and enforcement actions by a department. Subparts (1) through (3) of section 26–24–20 specify the steps that a board must go through in promulgating rules, regulations, or standards. The trial court and the parties assumed that subpart (5), which states that a "final determination" is subject to judicial review, contemplated review of board rulemaking proceedings. This interpretation is incorrect. Subparts (4), (5), and (6) of section 26–24–20 have nothing to do with rulemaking; rather, they describe procedures to be followed when a person "aggrieved by any action or inaction of the local health department" seeks review of that action. Subparts (4) through (6) entitle the aggrieved person to an informal hearing before the health department and, in addition, an appeal and a further hearing before the board

of health. It is the board's "final determination" in such a matter that subpart (5) permits the courts to review at the instigation of either the department or the complaining party. Since this case involves only a challenge to board rulemaking, section 26–24–20(5) cannot provide a basis for jurisdiction.

 This conclusion, however, is not fatal to plaintiffs' suit because we find that jurisdiction is conferred upon the trial court by the Declaratory Judgment Act. That statute gives the district courts jurisdiction over any case brought to determine a question of construction or validity arising under, *inter alia,* "a statute [or a] municipal ordinance." U.C.A., 1953, § 78–33–2 (1977 ed.). At first blush, the term "municipal ordinance" would not seem to cover the Board's rule. It might be argued that if the legislature intended to include rules made by agencies within the purview of the Declaratory Judgment Act, it could have plainly said so. Indeed, some state statutes have done so expressly. *See, e.g.,* Ohio Rev. Code Ann. § 2721.03 (Page 1981). However, a closer examination of Utah's Declaratory Judgment Act leads to the conclusion that section 78–33–2 should be construed to include rules of local agencies such as the Davis County Board of Health.

In 1925 Utah adopted the Uniform Declaratory Judgment Act. 1925 Utah Laws, ch. 24. Section 2 of that Act, presently appearing as section 78–33–2 of the Code, has remained substantially unchanged since its original enactment. At that time, before the delegation of law-making powers to administrative agencies became common, the words "statute" and "municipal ordinance," were both used to encompass a wide variety of prospective rules of general application enacted by government. Any of these laws, whether at the state or local level and without regard to the specific unit of government promulgating them, could be challenged by an action for declaratory judgment. This broad view is supported both by the Utah Constitution, where the term "municipal" was used in 1895 to mean

pertaining generally to local government, and by our early cases. *See Salt Lake City v. Wagner,* 2 Utah 400, 403 (1881 ed.); *Lehi City v. Meiling,* 87 Utah 237, 280–82, 48 P.2d 530, 550 (Wolfe, J., concurring specially) (1935); *State Water Pollution Control Board v. Salt Lake City,* 6 Utah 2d 247, 254, 311 P.2d 370, 374 (1957).

■ In the sixty years since our statute was enacted, agencies with delegated law-making powers have proliferated. No longer can all governmental law-making be comprehended by the words "statute" or "municipal ordinance." But the basic purpose of the Declaratory Judgment Act has not changed over the years, and its terms should be construed to fulfill the original purpose of subjecting laws to judicial scrutiny before enforcement against affected citizens. *See Baird v. State,* Utah, 574 P.2d 713, 717 (1978); *Lindon City v. Engineers Construction Co.,* Utah, 636 P.2d 1070, 1073 (1981); *cf.* 22 Am.Jur.2d § 31 (1965). This approach is supported by rulings from other jurisdictions that have permitted challenges of administrative agency rules by actions for declaratory judgment, despite no express mention of agency rules in their respective declaratory judgment acts. *See Bresler v. Tietjen,* Mo., 424 S.W.2d 65, 70 (1968); *Gibbs v. Cochran,* 281 Ala. 22, 198 So.2d 607, 608–09 (1967). Therefore, we conclude that rules made by the Davis County Board of Health fall within the term "municipal ordinance" used in section 78–33–2 because they are legislative enactments of a local governmental body.[1]

■ The next issue is whether these parties have standing under the Declaratory Judgment Act to assert their various claims. Section 78–33–2 provides that "any person ... whose rights, status or other legal relations are affected by" a governmental enactment may sue for a declaratory judgment. To have standing to bring

such an action a plaintiff may not assert "only a general interest he shares in common with members of the public at large," but "must be able to show that he has suffered some distinct and palpable injury that gives him a personal stake in the outcome of the legal dispute." *Jenkins v. Swan,* Utah, 675 P.2d 1145, 1148–49 (1983); *accord, Kennecott Corp. v. Salt Lake County,* Utah, 702 P.2d 451, 454 (1985); *see generally Baird v. State,* Utah, 574 P.2d 713 (1978). We conclude that Anthony's, as a food service establishment subject to the challenged regulation, satisfies the standing test of *Jenkins* with respect to both its request for a declaratory judgment as to the validity of the regulation and its claim under section 78–33–8 of the Declaratory Judgment Act for supplemental relief. Anthony's contends it has been forced to pay fees to the Board under an invalid regulation. If correct, Anthony's has a claim for supplemental relief in the form of money damages from the Board in the amount of the fees paid. This is certainly the sort of concrete personal injury we had in mind in *Jenkins.*

■ The Utah Restaurant Association presents a different question. In the abstract, there is no obstacle to an association's seeking a declaratory judgment, since section 78–33–13 makes an association or corporation a person for purposes of the Declaratory Judgment Act. The real issue is whether and to what degree the Association has standing to assert claims on behalf of its individual members, a number of which are Davis County establishments subject to the fee regulation. We conclude that the Association can seek a declaratory judgment as to the regulation's validity but lacks standing to seek a refund of fees paid by its members.

■ Although we are not bound to follow federal precedent in this area, those

---

1. We need not reach the separate question of whether the term "statute" includes all rulemaking by state agencies. Applying parallel reasoning, that interpretation might be necessary to fulfill the purpose of the Utah Declaratory Judgment Act. However, the legislature has dealt

with this problem by the 1973 enactment of the Utah Administrative Rulemaking Act which applies to all state agencies. U.C.A., 1953, §§ 63–46a–1 to –15 (Supp.1985). Section 63–46a–13 of that Act expressly provides for declaratory judgment actions to test any agency rule.

courts have developed useful principles relating to the standing of an association to bring an action on behalf of its members. Even within the constraints of the federal constitution's requirement of a case or controversy, the federal courts have granted standing to associations where two criteria are met: (i) the individual members of the association have standing to sue; and (ii) "the nature of the claim and of the relief sought does not make the individual participation of each injured party indispensable to proper resolution of the cause...." *Warth v. Seldin,* 422 U.S. 490, 511, 95 S.Ct. 2197, 2211, 45 L.Ed.2d 343 (1975). This test is a pragmatic one. Where, as a practical matter, the rights asserted and the remedies sought do not require direct participation by affected individuals who would have standing, there is no reason not to permit associations to press claims common to their members. This approach to associational standing has the advantage of permitting the prosecution of legitimate claims by an entity with the capacity to spread the costs of litigation among its members and to assume the burdens incident to it, rather than requiring a single litigant to carry the entire load. To deny an association standing under such circumstances just might deter the assertion of valid claims without serving any countervailing public purpose. We decline to take such a sterile approach to standing and adopt the test above stated for determining an association's standing to sue. It should be noted that this test is entirely compatible with the principles set forth in *Jenkins v. Swan.*

To decide whether the Utah Restaurant Association has standing, we first consider the status of its individual members. A substantial number of the Association's members are Davis County businesses subject to the permit fee. As such, they have standing to sue as individual entities under the Declaratory Judgment Act.

Next, in order to determine whether participation of the individual members is indispensable to a proper resolution of the matter, we consider the rights asserted and the remedy sought. In addition to declara-

tory and injunctive relief, the Association prays for damages in the form of a refund of all fees paid. There is no apparent reason why the Association should not be permitted standing to seek declaratory and injunctive relief. The questions raised as to the validity of the Board's enactment are common to all Davis County members of the Association. And a declaration as to its invalidity and an injunction against its further implementation would benefit these members as fully as if they had sued individually. Nothing suggests that their individual interests will not be adequately protected by a declaratory judgment in favor of the Association. *Cf.* Utah R.Civ.P. 23(b)(2).

However, we cannot permit the Association standing to seek a refund of fees paid on behalf of its Davis County members. If plaintiffs are correct as to the invalidity of the regulation, each establishment that has paid fees has a money claim against the Board. There is no indication that any of those claims have been assigned to the Association. Therefore, the individual members are the real parties in interest and would have to be parties to any litigation determining those money claims. We conclude that any action for a refund must be brought either by each food service establishment that has paid a fee or by a plaintiff suing on behalf of all the establishments as a class, pursuant to Utah Rule of Civil Procedure § 23(b)(3). *See Warth v. Seldin,* 422 U.S. at 515–16, 95 S.Ct. at 2213–14. Therefore, we hold that the district court erred in permitting the Association standing to seek a refund of fees paid. That portion of the action should have been dismissed.

■ Reaching the merits, the substantive issues on appeal mirror those passed upon by the court below, *i.e.,* whether the Davis County Board of Health failed to comply with the applicable procedural requirements in adopting the fee regulation and whether the fee is invalid because it is, in reality, a tax. Initially, it must be noted that the Board has no inherent power to

charge fees or levy taxes of any kind. Any such authority must be conferred on it by the county which created it, acting within its lawful authority, or by the legislature. The Board does not contend that Davis County has delegated to it any authority to levy taxes. All the county did was create a local board of health in accordance with the provisions of the Local Health Department Act. U.C.A., 1953, § 26–24–1 to –24 (1984 ed.). Therefore, the Board's authority is limited to the powers conferred upon it by the Act. The pertinent provision, section 24–24–14(14), states that "[a] local health department shall have ... the following powers and duties: ... [to] establish and collect appropriate fees...." U.C.A., 1953, § 26–24–14(14) (1984 ed.). The validity of the regulation at issue in this case turns on whether the "fee" provided for in the regulation was a fee within the meaning of the statute, rather than a tax, and whether the Board complied with the procedural requirements of the statute for establishing the fee.

Section 26–24–20 of the Code provides that prior to the adoption of any rule, regulation, or standard, the Board or its designees must hold public hearings. In addition, the statute specifically requires that "[a] record or summary of the proceedings of any hearing shall be taken and filed with the board, together with findings of fact, conclusions of law, and the order of the board or hearing officer." U.C.A., 1953, § 26–24–20(3) (1984 ed.). One would not expect that in promulgating a rule, an agency would have to prepare findings of fact and conclusions of law; such a requirement is normally associated only with the adjudication of a claim. However, the language of this section is clear even if its purpose is not. The parties have stipulated that public hearings were held; however, the Board filed no findings of fact, conclusions of law, or order. The letter of the law has not been satisfied. The trial court's determination that the permit fee schedule is invalid is correct.

Because the fee schedule was not properly promulgated, the question of whether the trial court was correct in finding that the fee was a tax need not be reached. However, should the Davis County Board of Health again promulgate a similar fee regulation, it would be well advised to do so in careful compliance with the procedures required by the Local Health Department Act. Findings of fact should be entered that are sufficiently comprehensive to allow a reviewing court to assess whether the measure has been designed to actually defray some or all of the costs of inspecting the food service establishments on which it is imposed. *See Provo City v. Provo Meat & Packing Co.*, 49 Utah 528, 534, 165 P. 477, 479 (1917); *Smith v. Carbon County*, 90 Utah 560, 563–64, 63 P.2d 259, 260 (1936). The findings should also demonstrate that there is some assurance that the money collected will be actually used to defray those costs. *Weber Basin Home Builders Association v. Roy City*, 26 Utah 2d 215, 216–17, 487 P.2d 866, 867 (1971). With such information in hand, a court reviewing any future challenge to a new rule should have little difficulty in determining the nature of the enactment.

The judgment of the district court holding the fee regulation invalid is affirmed. That portion ordering the refund of fees paid to establishments other than Anthony's is reversed and that portion of the Association's complaint seeking a refund of all fees paid is dismissed for lack of jurisdiction.

HALL, C.J., and HOWE and DURHAM, JJ., concur.

STEWART, J., concurs in the result.