UTAH RESTAURANT ASSOCIATION, a Utah non-profit corporation; Utah Retail Grocers Association, a Utah non-profit corporation; Lamb's Restaurant; Flying Dees Family Restaurants; Kentucky Fried Chicken–Harmon's Management Corp.; Gastronomy, Inc.; Taco Maker, Inc.; Market Street Grill; Market Street Broiler; New Yorker Restaurant; Hilton Hotels–Pearson Enterprises; Sizzling Platter, Inc.; Stan's Market; N.P.S.; Crystal Palace Market; Wheel–In Market; The Table Supply; Voyles Market; The Store; Albertson's, Inc.; Family Market; Safeway Stores, Inc.; Tanning Experience; O.P. Skaggs # 1; SAB Enterprises; 8th Avenue Meat & Grocery; Macey's, Inc.; Bell's 48th St. Market; Peterson Foodtown; Food–4–Less; Dan's Foods; Montie's Bestway; and Hale's Market, Plaintiffs and Respondents,

v.

SALT LAKE CITY–COUNTY BOARD OF HEALTH, Defendant and Appellant.

No. 870420–CA.

Court of Appeals of Utah.

March 10, 1989.

David E. Yocom, Thomas L. Christensen, Salt Lake City, for defendant and appellant.

Gary E. Atkin, Salt Lake City, for plaintiffs and respondents.

Before DAVIDSON, BENCH and JACKSON, JJ.

JACKSON, Judge:

The Salt Lake City–County Board of Health (the "Board"), seeks reversal of a declaratory judgment holding its food service establishment inspection fee regulation, adopted under the Local Health Department Act (the "Act"),[1] legally invalid. We reverse.

The Board is a non-elected body appointed by the Salt Lake City and County Commissioners to act as a local board of health. Its powers and duties are set forth in the Act. *See* Utah Code Ann. § 26–24–14 (1984). At a June 1986 meeting, the Board discussed reviving a plan to initiate an inspection fee to be paid by "food service/food establishment" businesses. Staff members presented information about inspection fee classifications and schedules in several nearby states and estimated the health department was spending $600,000 to inspect food establishments at least twice yearly as required by Utah State Food Service Regulations. The Board voted to hold a public hearing on the inspection fee proposal. A fee schedule (referred to as the "fee standard") was drafted, listing categories of food establishments and setting annual inspection fees that ranged from $40 to $100, depending on the number of service bays, or the number of seats, or square footage. The dollar amounts, categories, and definitions in the proposed standard were prepared and adopted based upon recommendations of the department's staff and the Board's deliberations.

After publication of notice in local newspapers and a thirty-day period for public comment, during which copies of the proposed fee schedule and regulation were made available to the public, a public hearing was held on September 10, 1986, at which approximately 30–40 people submitted oral and written comments. There was no testimony or written evidence submitted at this public hearing showing the basis for the food establishment categories or fee amounts set forth in the proposed inspection fee schedule. Health department staff prepared a document summarizing and responding to the criticisms of the proposed schedule made at the public hearing. The Board also prepared a draft of its findings of fact, conclusions of law, and order, required by Utah Code Ann. § 26–24–20(3) (1984) as part of the rulemaking process. *See Utah Restaurant Ass'n v. Davis County Bd. of Health*, 709 P.2d 1159 (Utah 1985).

At its October 2, 1986, meeting, Board members again discussed the fee schedule among themselves and heard additional input from representatives of affected food establishments. The Board then voted to institute the fee program and adopted the prepared findings, conclusions, and order, in which it found there was no information put forth by critics demonstrating that the

1. Utah Code Ann. §§ 26–24–1 through –24 (1984).

proposed fee was either unlawful, excessive, not tied directly to the cost of the inspection program ($453,000), or not to be used solely to support that program. It also specifically found that the proposed fees were reasonable and that they would raise $156,000, approximately one-third of the annual cost of the inspection program. With regard to the use of the new fees, the Board stated:

> 9. Money collected by the proposed fee will be deposited in an account of the Health fund set up specifically to receive monies generated by the proposed standard.
>
> 10. Funding to support the Food Inspection Program will be drawn from the account mentioned above in Item #9.

The respondents subsequently filed this declaratory judgment action[2] to challenge the fee regulation's constitutionality and validity. After the parties stipulated to undisputed facts regarding the sequence of events and the basis for the Board's findings and conclusions, three issues were submitted for determination on cross-motions for summary judgment and ruled on.[3]

The trial court held the fee regulation invalid and void *ab initio* on each of the asserted grounds: (1) the findings of fact and conclusions of law adopted by the Board on October 2, 1986, are not supported by evidence presented at the public hearing held September 10, 1986, contrary to the requirements of the Act; (2) despite its label, the inspection "fee" is invalid because it constitutes a tax, which the Board is not statutorily authorized to levy; and (3) even if it is not a tax, the Act does not authorize the Board to impose fees in the form of charges on food establishments to defray the costs of the food establishment inspection program.

The Board contends the trial court erred on all three points. On appeal, we do not defer to the trial court's rulings on these questions of law. Instead, we review them under a correction of error standard. *E.g., Creer v. Valley Bank & Trust Co.*, 770 P.2d 113 (1988); *Western Kane County Spec. Serv. Distr. No. 1 v. Jackson Cattle Co.*, 744 P.2d 1376 (Utah 1987).

## VALIDITY OF BOARD FINDINGS

Section 26–24–20(1) of the Act gives the Board authority to enact rules, regulations, or standards "necessary for the promotion of public health ... and the prevention of outbreaks and spread of communicable and infectious diseases...." However, the Board is required to provide public hearings prior to any such enactment. *See* Utah Code Ann. § 26–24–20(2) (1984). Subsection (3) states:

> The hearings may be conducted by the board at a regular or special meeting, or the board may appoint hearing officers, who shall have power and authority to conduct hearings in the name of the board at a designated time and place. A record or summary of the proceedings of any hearing shall be taken and filed with the board, together with findings of fact, conclusions of law, and the order of the board or hearing officer. In any hearing, a member of the board or the hearing officer shall have power to administer oaths, examine witnesses, and issue notice of the hearings or subpoenas in the name of the board requiring the testimony of witnesses and the production of evidence relevant to any matter in the hearing.

Utah Code Ann. § 26–24–20(3) (1984). Respondents do not assert a complete lack of any basis for the proposed fee schedule. Instead, respondents contend this section of the Act requires the findings of the Board to be supported by at least some

---

2. Utah Code Ann. §§ 78–33–1 through –13 (1987). *See Utah Restaurant Ass'n v. Davis County Bd. of Health*, 709 P.2d 1159, 1161 (Utah 1985) (rules of county board of health constitute "municipal ordinance" whose construction or validity can be challenged in a declaratory judgment action).

3. The respondents also contended the Board had not complied with the statutory procedural requirements in imposing the fees, presumably for unarticulated reasons other than the lack of evidence at the hearing to support the findings and fee schedule. However, the trial court did not rule on this as a separate issue, and it has not been raised in this appeal.

evidence *introduced at the required public hearing* "or the mandate for a public hearing is worthless." The parties agree that the Board's fee standards were prepared on the basis of information provided by health department staff to the Board *before* the public hearing and not on the basis of evidence submitted *at* the public hearing. Therefore, respondents argue, the findings and the fee schedule are invalid.

In effect, respondents contend that the public hearing mandated by the Act during rulemaking is a trial-type hearing. They claim they were not fully informed of the information submitted to and considered by the Board; they complain they did not have the opportunity to offer rebuttal evidence or cross-examine everyone submitting information to the Board. Those are the main elements of a trial. The trial court accepted this argument and held that the statute limited the rulemaking process to consideration of "evidence" presented at the September 10, 1986, public hearing. We conclude this is an erroneous interpretation of the statute's requirements.

An inspection fee adopted by a local board of health was also at issue in *Utah Restaurant Association v. Davis County Board of Health,* in which the fee standard was invalidated because the board had failed to comply with the statutory requirement that findings of fact and conclusions of law be filed. In thus applying the clear letter of the law, the court noted that such a requirement is normally associated only with the adjudication of a claim, not with rule promulgation. *Id.* 709 P.2d at 1164.

■ In interpreting this provision of the Act, the Utah Supreme Court clarified that subsections (1) through (3) of section 26–24–20 delineate the steps which a local board must follow in its rulemaking process. *Id.* at 1161. In contrast, subsections (4) through (6) of the same section apply to enforcement actions by a local health department. *Id.* It is apparent that, despite the use of terms normally employed in a trial context, subsections (1) through (3) create a "notice and comment" public hearing rulemaking process, not a trial-type procedure.

■ There is no question that notice and opportunity to be heard were provided to the public in accordance with the statute. It is also apparent respondents had a full and fair opportunity to present evidence to the Board supporting their claims that the fee is unnecessary and burdensome and that the fee schedule is unreasonable in the way it categorizes food establishments. The text of the proposed fee schedule, drafted based on information provided to the Board by its staff, was made available to the public during the comment period. The public hearing was conducted by a health department staff member as hearing officer, and three other representatives of the department were present. Oral statements and written comments were received from various organizations and individuals, including many of the respondents and their legal counsel. Attendees were informed that a summary of the hearing and written comments would be submitted to the Board before its regular meeting on October 2, 1986, and that interested parties could attend that meeting and make additional comments. The Board's staff prepared and submitted written responses to the comments made at the September public hearing. Representatives of the respondents and their legal counsel appeared at the October 2 meeting and made further arguments to the Board prior to its final adoption of findings, conclusions of law, and an order approving the fee regulation.

The foregoing process comports with the procedure prescribed in the statute. Further, the Board's procedures were in accord with the purpose of a public rulemaking hearing, i.e., to afford interested persons an opportunity to submit written data, views, and arguments regarding why the proposed regulation should or should not be adopted. *See Colorado Auto & Truck Wreckers Ass'n v. Department of Revenue,* 618 P.2d 646, 652 (Colo.1980) (in which the statute described the purpose of the mandatory public hearing in these terms).

Hearings in administrative rulemaking procedure are usually either investigato-

ry or designed to permit persons who may not have been reached in a previous process of consultation and conference to come forward with evidence or opinion. The purpose is not to try a case, but to enlighten the administrative agency, and to protect private interests against uninformed and unwise action.

2 Am.Jur.2d *Administrative Law* § 283 (1962).

Section 26–24–20(3) cannot properly be said to require an adversarial, trial-type hearing when there is no requirement that the Board's rulemaking be based solely on a trial-type record.[4] The statute does *not* say evidence must be produced at the hearing and upon such evidence the Board shall make written findings. Although the statute authorizes the Board or its hearing officer to take testimony and compel witnesses to attend or produce relevant "evidence" at the public hearing, it does not say the Board shall act only on the basis of such "evidence" or the record compiled exclusively at the public hearing. In addition, contrary to the trial court's reading of the statute, it imposes no affirmative duty on the Board to submit evidence at the public hearing in support of its own proposed fee regulation. *See Long v. Department of Nat. Res.,* 118 Ohio App. 369, 195 N.E.2d 128 (1963).

In short, although the Board must consider all material presented to it during the public comment period and at the public hearing that is relevant to a proposed rule or regulation, the Act does not restrict it to acting only on such data or testimony when finally adopting rules or regulations. *See State v. Hebert,* 743 P.2d 392, 397 (Alaska App.1987); *International Council of Shopping Centers v. Oregon Envtl. Quality Comm'n,* 27 Or.App. 321, 556 P.2d 138 (1976). It may rely on its own experience, its expertise, and any facts known to it from whatever source they are drawn. *See* 1 K. Davis, *Administrative Law Treatise* § 6.17 (2d ed. 1978); *see also International Council of Shopping Centers,* 556 P.2d at 141 (agency involved in informal rulemaking can properly rely on data gathered from publications in its field, interviews, input from advisory committees, or even information informally obtained). It follows that adverse public input, once considered by the Board, may be disregarded even if unrebutted by testimony or evidence presented at the public hearing. *See Colorado Auto & Truck Wreckers Ass'n,* 618 P.2d at 652.

The trial court erred in holding the Board's findings of fact and conclusions of law invalid under the Act.

## AUTHORIZATION TO IMPOSE FEES

■ A local board of health has no inherent power to charge fees or levy taxes of any kind. *Utah Restaurant Ass'n v. Davis County Bd. of Health,* 709 P.2d at 1163–64. "Any such authority must be conferred on it by the county which created it, acting within its lawful authority, or by the legislature." *Id.* at 1164. In this case, the Board contends it is authorized to impose an inspection fee under its statutory grant of powers. In ruling that the inspection fee constituted either an impermissible tax or an unauthorized fee, the trial court focused only on section 26–24–14(14) of the Act, which gives a local health department authority to

> establish and collect appropriate fees, to accept, use and administer all federal, state, or private donations or grants of funds, property, services, or materials for public health purposes, and to make such agreements, not inconsistent with law, as may be required as a condition to receiving such donation or grant[.]

The trial court concluded this provision does not authorize the Board to offset a

---

**4.** Trial procedure is inappropriate on nonfactual issues, on issues of law or policy, and on issues of broad legislative fact. Trial procedure is especially inappropriate for untangling jumbles of policy, law, discretion, and legislative fact. The reason for not using trial procedure is that such procedure is not intrinsically designed for nonfactual issues; much administrative experience proves that trial procedure to resolve issues other than issues of adjudicative fact or specific legislative fact is wasteful, cumbersome, expensive, and unhelpful. No trial judge would use trial procedure to resolve a nonfactual issue. Neither should an agency.

3 K. Davis, *Administrative Law Treatise* § 14.3 (2d ed. 1980).

portion of the costs involved in particular programs through the imposition of fees for that program. According to the trial court, the term "fees" in this section refers only to charges for "such minor items as preparing certificates, copying fees, and similar fees for specific services to particular persons for their specific benefit...." We do not agree.

The term "fees" is used three times in the Local Health Department Act. In addition to section 26–24–14(14), section 26–24–15(1) provides for apportionment of the local health department costs among participating counties and municipalities and states that "money available from fees, contracts, surpluses, grants, and donations may be used to establish and maintain local health departments." Moneys received from these sources, including "fees ... for local health purposes," are credited to a health department fund which must be expended only for maintenance and operation of the local health department. Utah Code Ann. § 26–24–18 (1984).

In all three sections of the Act, fees are grouped with several other means of providing funds for establishing, maintaining, and operating a local health department, including its various programs designed to promote and protect public health. There is not the slightest hint that the legislature intended to restrictively define "fees" as involving only minimal charges for clerical or ministerial services.[5] We therefore conclude that a charge imposed by a local board on health department program participants to defray the costs of the program is a "fee" within the purview of the Act.

## FEE OR TAX?

■ Whether or not the particular food establishment inspection fee regulation adopted by the Board is a "tax," not authorized by the Act, turns on the actual purpose for its adoption. *See Utah Restaurant Ass'n,* 709 P.2d at 1164.

If the money collected is for a license to engage in a business and the proceeds therefrom are purposed mainly to service, regulate and police such business or activity, it is regarded as a license fee. On the other hand, if the factors just stated are minimal, and the money collected is mainly for raising revenue for general municipal purposes, it is properly regarded as the imposition of a tax, and this is so regardless of the terms used to describe it.

*Weber Basin Home Builders Ass'n v. Roy City,* 26 Utah 2d 215, 487 P.2d 866, 867 (1971) (footnote omitted). *See Provo City v. Provo Meat & Packing Co.,* 49 Utah 528, 165 P. 477, 479 (1917) (municipality may charge meat sellers fees to cover costs of inspection and policing of meat sales).

In *Utah Restaurant Association,* which involved a similar inspection fee regulation adopted by a local board of health, the food establishments also claimed the fee was invalid as a tax. The Utah Supreme Court did not need to reach this issue, however, because the regulation was invalidated on the alternative basis, noted above, i.e., the board's failure to file the requisite findings of fact and conclusions of law. *Utah Restaurant Ass'n,* 709 P.2d at 1164. Nonetheless, the court proceeded to issue an advisory opinion describing factual findings by the board that would provide information supporting a conclusion that its charge for inspecting food establishments was a valid fee instead of a tax. *See id.* First, has the regulation been designed to actually defray some or all of the costs of inspecting the food service establishments on which it is imposed? Second, is there some assurance that the money collected will actually be used to defray those costs? With adequate answers to these questions, a reviewing court can more easily determine the true nature of the enactment, *see id.,* and make the distinction drawn in *Weber Basin Home Builders Association, supra.*

Here, the record demonstrates the Board acted to comply with the advice in *Utah Restaurant Association* when it adopted findings of fact and conclusions of law. The Board specifically found the actual

---

**5.** The record before the Board shows that other fees are regularly charged by the health department to offset the costs of mandatory immuni-zations, as well as for inspections under the asbestos and solid waste programs.

cost of the food establishment inspection program to be $453,000, of which only $156,000 would be paid for by the proposed fees. The balance was to be raised through food handler permits and general taxes. The Board's findings, conclusions, and order require the collected inspection fees to be deposited in a special account, to be drawn upon to support the food establishment inspection program. Furthermore, the record before the Board clearly shows that the inspection fees were earmarked for the inspection program and could be spent for no other purpose, a fact reiterated before the district court in the unrefuted affidavit of a deputy county auditor. Respondents did not submit any controverting evidence or information on these matters to the Board or to the trial court.

In light of the purpose of the inspection fee program, its partial funding by fees imposed on the inspected food establishments, and the restricted use of the collected fees, we conclude the inspection fee regulation adopted by the Board was not invalid as an unauthorized tax. The trial court's ruling to the contrary was in error.

The judgment of the trial court is reversed.

DAVIDSON and BENCH, JJ., concur.