Carol CAMP, Plaintiff, Respondent, and Cross-Appellant,

v.

OFFICE OF RECOVERY SERVICES OF the UTAH DEPARTMENT OF SOCIAL SERVICES, Defendant and Appellant.

No. 890176–CA.

Court of Appeals of Utah.

Aug. 23, 1989.

R. Paul Van Dam and Douglas W. Springmeyer, Salt Lake City, for defendant and appellant.

Daniel F. Bertch, Robert J. Debry, and Gordon K. Jensen, Salt Lake City, for plaintiff, respondent, and cross-appellant.

Before BENCH, GREENWOOD and JACKSON, JJ.

## OPINION

BENCH, Judge:

Defendant appeals from a declaratory judgment that determined the State was entitled to less than full reimbursement for medical assistance paid on plaintiff's behalf. We reverse.

The facts in this case are not disputed. On June 15, 1985, the daughter of plaintiff Carol Camp was critically injured in a motor vehicle accident in Nevada. Before her death six days later, Camp's daughter incurred more than $39,000 in medical expenses.

In order to obtain financial assistance to pay those expenses, Camp filed an application for medical assistance (hereafter "Medicaid"[1]) from the State of Utah on July 22, 1985. Camp was denied assistance at that time because her application form did not contain the signature of a witness. The next day, Camp retained counsel, who determined that the owner of the vehicle in which Camp's daughter was riding as a passenger was insured by Farmers Insurance Exchange (Farmers). Plaintiff's counsel wrote to Farmers, claiming damages under the policy. On September 3, 1985, Farmers verbally agreed to settle the case for their policy limit of $20,000. The

---

1. We use the term "Medicaid" for convenience, although it is not clear from the record whether Camp was later determined to be eligible for assistance under the state program established pursuant to Title XIX of the federal Social Security Act or the Utah Medical Assistance Program established under Utah Code Ann. § 26–18–10 (1989).

following day, Camp reapplied for Medicaid assistance. Camp was found eligible and Medicaid subsequently reimbursed the medical care providers $15,018.41 in full satisfaction of the outstanding medical bills.

By October 22, 1985, defendant Office of Recovery Services (ORS) had learned of the proposed settlement with Farmers and notified Camp's attorney that it was claiming an unspecified lien on the settlement proceeds. It is unclear how the State was informed of the proposed settlement, but Camp had not disclosed it in her reapplication for medical assistance. Camp then signed a settlement agreement with Farmers on November 20, and her counsel deposited the $20,000 settlement check into a trust account on November 25, 1985.

ORS, through the Office of the Attorney General, claimed $15,018.41 of the settlement. Camp commenced an action for declaratory relief in order to determine her rights to the settlement proceeds. She later moved for partial summary judgment which the district court partially granted. The court made the following determinations: (1) Utah, not Nevada, law applied; 2) the State's right of recovery was absolute with respect to the settlement of medical expenses and was not an equitable right of subrogation; 3) the State's right of recovery did not extend to settlement of other damages. Counsel then stipulated that the case be submitted on the basis of affidavits and the pleadings.

In a memorandum decision, the district court determined that Camp incurred total "special and general damages" of $91,-554.56. The court then determined that the State's claim of $15,018.41 represented 16.4% of the total damages and applied that percentage to the insurance settlement of $20,000. The court calculated that the State was entitled to 16.4% of $20,000, or $3,280.

The State objected to this determination, claiming that it was entitled to full reimbursement in the amount of $15,018.41. The State also objected to Camp's motion to require the State to pay a pro rata share of Camp's legal costs and a reasonable share of her attorney fees. The district court rendered a declaratory judgment reiterating its initial award to the State of $3,280, and permitting Camp to offset that amount by $223.10 in costs and attorney fees. Both parties appeal the judgment.

## MEDICAID REIMBURSEMENT

The primary issue raised on appeal is whether the State is entitled to full reimbursement of its Medicaid expenditures from the proceeds of Camp's settlement. The State cites Utah Code Ann. § 26–19–7(2) (1989) of the Medical Benefits Recovery Act for its authority to "recover in full from the recipient all medical assistance which it has provided" when the recipient files a claim against a third party for recovery of medical costs without the State's written consent. It is undisputed that Camp never sought the State's consent, written or not, to file a claim with Farmers.

Camp, on the other hand, argues that no such consent was required under Utah Code Ann. § 26–19–7(1)(a) (1989) because the State had not yet provided, nor had become obligated to provide, medical assistance at the time Camp made her claim to Farmers for damages. Because the State's consent was not required, argues Camp, the State has merely an equitable right of subrogation against the recipient of the settlement proceeds.

The district court rejected Camp's equitable subrogation theory and determined that the State had an absolute right of recovery for its medical expenses. The court reasoned, however, that since medical expenses made up only a part of the settlement, the State was only entitled to a share of the settlement in the same proportion as the medical expenses bore to the total damages in the case. In making this determination, the court did not directly address the applicability of section 26–19–7.

Our standard of review for the trial court's disposition of legal questions, whether from a partial summary judgment or declaratory judgment, is a correction-of-error standard, giving no deference to the trial court's ruling. *Utah Restaurant*

*Ass'n v. Salt Lake City–County Bd. of Health,* 771 P.2d 671, 673 (Utah Ct.App. 1989), *cert. filed,* 106 Utah Adv.Rep. 63 (1989); *Moon Lake Elec. Ass'n v. Ultrasystems W. Constrs., Inc.,* 767 P.2d 125, 128 (Utah Ct.App.1988). In this case, we conclude that the proportionate award of funds to the State without adherence to section 26–19–7 constituted reversible error, because, on the undisputed facts, the statute applies and is controlling.

Subsection 26–19–7(1)(a) prohibits a Medicaid recipient from filing a claim against a third party for the recovery of medical costs for an injury for which the State has provided or has become obligated to provide assistance without the State's written consent. "Recipient" means a person who has applied for or received medical assistance from the State, and includes his or her estate and survivors. Utah Code Ann. § 26–19–2(4) (1989). If the recipient fails to obtain written consent, "The [State] is not bound by any . . . agreement, or compromise rendered or made on the claim . . . and . . . may recover in full from the recipient all medical assistance which it has provided. . . ." Utah Code Ann. § 26–19–7(2) (1989).

■ Our "primary responsibility in construing legislation is to give effect to the intent of the Legislature." *Christensen v. Industrial Comm'n,* 642 P.2d 755, 756 (Utah 1982). The best indicator of legislative intent is the plain language of a statute. *Berube v. Fashion Centre, Ltd.,* 771 P.2d 1033, 1038 (Utah 1989). The language in section 26–19–7 is unequivocal: if a Medicaid recipient proceeds without the State's written consent, the State is not bound by any agreement made by the recipient and *may recover in full from the recipient all medical assistance which the State has provided.* We agree with the State's contention that the legislature sought to prevent double recovery by Medicaid recipients, i.e., payment from the tortfeasor for expenses also paid by the State. We also believe that "[t]he legislature . . . weighed medical recipients' need to be compensated for their injuries against the need for conservation of public funds and determined that the public funds have priority." *Coplien v. Department of Health & Social Servs.,* 119 Wis.2d 52, 349 N.W.2d 92, 95 (Ct.App.1984).

■ Accordingly, we conclude that the State is entitled to *full,* rather than equitable, reimbursement from a recipient for all its Medicaid expenditures when the recipient proceeds against a third party without the State's consent. *Cf. Coplien,* 349 N.W.2d at 92 (in construing a nonsubrogation statute, court held that state was entitled to full reimbursement from Medicaid recipient's settlement even though settlement did not make the recipient "whole"). We recognize that this may work harsh results in some instances, but courts are not free to disregard the plain meaning of statutory language despite such results. *See Board of Educ. v. Leslie,* 112 Ariz. 463, 543 P.2d 775, 777 (1975). Nor may we interpret unambiguous language in the statute itself so as to contradict its plain meaning. *Provo City Corp. v. Willden,* 768 P.2d 455, 458 (Utah 1989). We are convinced that the wording of section 26–19–7 was intended to discourage Medicaid recipients from proceeding without the State's permission, and thereby further the public policies contemplated by the legislature.

Camp, as administrator of her daughter's estate, first applied for Medicaid on July 22, 1985, with a view toward paying the outstanding medical bills incurred before her daughter's death. The signature of "Carol Camp" appears on the Medicaid application form below the following notice:

> If I have a right of recovery under an insurance policy or against a person who may be liable for the medical expenses, I have an obligation to the State of Utah for medical expenses paid on my or my dependents['] behalf by the Utah Department of Health.

■ By this notice, Camp knew or should have known no later than July 22, 1985, that the State was entitled to reimbursement for its Medicaid payments. Yet the next day she retained counsel, apparently to ascertain and pursue her legal remedies against the driver of the truck in

which her daughter was riding at the time of the accident. Her counsel then filed a claim with this third party's insurer. Neither she nor her counsel sought the State's consent for the filing of that claim. Although the record indicates that Camp did not tell her counsel until October 18, 1985, that Medicaid "would probably pay [her daughter's] unpaid [medical] bills," Camp may not use that omission to circumvent the purposes of section 26–19–7. Since the statutory definition of "recipient" is one who has "applied for" or "received" benefits, we conclude that it is sufficient that Camp had applied for Medicaid prior to the filing of her claim.[2]

In view of this conclusion, we need not adopt Camp's suggestion that we determine the precise moment at which the State became "obligated" to provide Medicaid payments. However, even a broader reading of the statute in keeping with its legislative objectives would show that Camp still had ample opportunity to seek the State's consent prior to execution of the settlement agreement. After Camp was initially denied Medicaid benefits, she reapplied on September 4, 1985, and was deemed eligible.[3] We cannot ascertain the date on which Camp was informed she was eligible, but she apparently knew that Medicaid assistance was "probable" by October 18, the date her attorney learned of Medicaid's involvement. Nonetheless, her counsel did not contact the State then, or even after October 24, the date her attorney received the State's "verified lien statement." Since Camp did not release Farmers from liability until November 20, both Camp and her attorney were aware of the State's Medicaid assistance at least a month before the settlement agreement was executed.

Camp further argues that the State's entitlement to full reimbursement is conditioned on the nature of the damages sought in the settlement. Camp contends that the declaratory judgment properly apportioned her settlement between medical expenses and other damages. She bases this argument on the language of subsection 26–19–7(1)(a), which prohibits the filing of a claim against a third party for the recovery of *medical costs* without the State's written consent. The limitation of reimbursement to medical costs, she argues, impliedly means that no consent need be obtained where the recovery is for other damages.

■ It is unnecessary here for us to determine whether Camp's interpretation is correct. The affidavit of Farmers' insurance adjuster contains a statement that the settlement was for all legally recoverable damages, including medical expenses. Once a Medicaid recipient proceeds with a claim against a third party without State consent, and the claim includes medical expenses, as here, then subsection 26–19–7(2) applies. This subsection provides that the State is entitled to reimbursement for *all* its medical assistance, not merely that portion of the recipient's recovery designated as "medical expenses." Accordingly, since the settlement was initiated without the State's consent and specifically included medical expenses, the State is entitled to full reimbursement and not a proportionate share of the recovery.

Camp further defends the decision below by arguing that subsection 26–19–13(2) restricts the State from recovering its Medicaid expenditures from the estates of

---

**2.** In 1989, the Utah Legislature passed Senate Bill No. 72, the "Medical Recovery Notification Act Amendments," which affected the application of section 26–19–7. The existing language in subsection 26–19–7(1)(a) that prohibited the filing of a claim without State consent now includes the settlement, compromise, release, or waiver of a claim as well. Based on the rule that "[t]he original act must be compared with the amendment to determine what defect or defects in the original act the legislature intended to remedy," 1A *Sutherland Statutory Construction* § 22.32 (4th ed. 1985), we conclude

that the legislature merely intended to clarify the statute in order to encompass all claim resolutions. *See, e.g., Helvering v. Twin Bell Oil Syndicate,* 293 U.S. 312, 322, 55 S.Ct. 174, 179, 79 L.Ed. 383 (1934).

**3.** We also note that while Farmers had verbally agreed to settle the claim on September 3, there is no mention of the $20,000 settlement in Camp's Medicaid application dated September 4.

recipients under 65 years of age at the time of death. The State's counterargument is two-fold. First, the State claims that Camp's recovery was not part of the estate of her daughter because Camp recovered damages for a wrongful death claim. Second, subsection 26–19–13(2) deals only with a right of recovery against the estate of a recipient where no third party is involved. Camp claims that the settlement was in resolution of a survival action under Utah Code Ann. § 78–11–12 (1987), and was thus part of her daughter's estate.

■■■ Camp's letter to Farmers lodging her claim is not part of the record and it is unclear whether the claim was framed in terms of a survival action or an action for wrongful death. A survival action involves an action on behalf of an estate to recover for the interest of the decedent in the security of his or her person and property. *Runyon v. District of Columbia,* 463 F.2d 1319, 1321 (D.C.Cir.1972). A wrongful death action based on the death of a child involves an action by the parent or guardian for their own interest, which may include pecuniary losses and the loss of society, love, companionship, protection, and affection. *Jones v. Carvell,* 641 P.2d 105, 108 (Utah 1982). Camp's settlement, according to the insurer, was for all legally recoverable damages, including "medical expenses, [the decedent's] pain and suffering, her loss of future earnings, [Camp's] grief and bereavement and all other damages." Since this settlement reflects recovery under both causes of action, it is accessible to the State for reimbursement under either party's interpretation of the statute.

## COSTS AND FEES

The district court offset its award to the State with a proportionate share of Camp's costs and attorney fees. The State argues that the court erred in making this award because Utah Code Ann. § 26–19–7(4) (1989) states: "The department may not pay more than 33% of its total recovery for

attorney's fees, but shall pay its proportionate share of the cost of any action commenced in compliance with this section."

The State interprets the phrase, "any action commenced in compliance with this section" to mean any action commenced with the Department's written consent. The State argues that Camp is not entitled to any State contribution for costs and fees because Camp did not have the State's consent as required under subsection 26–19–7(2).

■■■ Because a recent amendment to the statute adopts language in furtherance of this meaning, we are inclined to agree that the commencement of an action without State consent would rule out a State contribution for costs and attorney fees.[4] We believe that this interpretation is consistent with the apparent legislative intent to prevent Medicaid recipients from obtaining double recovery. Otherwise, recipients would be rewarded for proceeding in contravention of the statute. Subsection 26–19–7(4) specifies that the State's contribution is for the costs of an action commenced with the State's consent. An "action" means "any legal proceeding in a court for the enforcement of a right; any proceeding for the purpose of obtaining such a remedy as the law allows; any judicial proceeding, which, if conducted to a termination, will result in a judgment." *Dinsmore v. Barker,* 61 Utah 332, 212 P. 1109, 1110 (1923) (quoting 1 *C.J.* 926). Under this definition, the only "action" heretofore commenced has been the declaratory judgment action appealed from. Therefore, subsection 26–19–7(4) indicates that the State has no duty to contribute to costs and fees connected with Camp's declaratory judgment.

Subsection 26–19–7(4) does not, however, discuss the contribution of costs and fees by the State where only a claim is filed without State consent. Camp proposes that the State help defray her cost of inducing a settlement under the "common fund

---

**4.** Subsection 26–19–7(4) now reads: "The department may not pay more than 33% of its total recovery for attorney's fees, but shall pay a proportionate share of the costs in an action that is commenced with the department's written consent."

doctrine." This is an equitable doctrine whereby "the fee of an attorney whose services create, increase, or preserve a fund or property to which others may also have a claim may be paid therefrom...." *Turtle Management, Inc. v. Haggis Management,* 645 P.2d 667, 671 n. 1 (Utah 1982). The doctrine, although recognized in *Turtle Management,* has never been applied in Utah. *See* Note, *Attorney's Fees in Utah,* 1984 Utah L.Rev. 553, 570. It is similarly inapplicable here.

 Utah continues to adhere to the general rule that attorney fees are recoverable only under contractual or statutory provision. *See Maughan v. Maughan,* 770 P.2d 156, 161 (Utah Ct.App.1989). Although subsection 26–19–7(4) may authorize an award of attorney fees to some Medicaid recipients, the fees must be in connection with the commencement of an action, and the action must be commenced with the State's written consent. Neither of those two conditions are present here. Since Camp cites no other statutory or contractual authority for an award of attorney fees, we conclude that the district court abused its discretion in offsetting the State's recovery with a proportionate share of Camp's attorney fees incurred in filing her insurance claim.

In summary, we reverse the district court and order that the State be reimbursed in full for all of its Medicaid expenditures. The declaratory judgment is also reversed with respect to all awards for costs and attorney fees, and each party will bear its own costs on appeal.

Reversed and remanded.

GREENWOOD and JACKSON, JJ., concur.