**In the Matter of the ESTATE OF Aundrae HIGLEY, a minor.**

**UTAH DEPARTMENT OF SOCIAL SERVICES, Appellee,**

v.

**Dennis J. HIGLEY, conservator, Appellant.**

No. 900236–CA.

Court of Appeals of Utah.

April 10, 1991.

Victor Lawrence (argued), Salt Lake City, for appellant.

R. Paul Van Dam, State Atty. Gen., and Douglas W. Springmeyer, Asst. Atty. Gen. (argued), Salt Lake City, for appellee.

Before BENCH, JACKSON and RUSSON, JJ.

OPINION

JACKSON, Judge:

Appellant ("the conservator") appeals from a summary judgment based on the

Medical Benefits Recovery Act, Utah Code Ann. § 26–19–1 to –18 (1989).[1] The trial court granted Utah Department of Social Services' ("the State") motion to recover state medical assistance payments provided for Aundrae Higley ("Higley"), minor son of the conservator.[2] The recovery consisted of proceeds obtained by Higley's conservator through a settlement with an automobile insurance carrier. We affirm.

## ISSUES

Appellant raises four issues concerning application of the provisions of the Medical Benefits Recovery Act: (1) the 1989 amendments to § 26–19–7 should not be applied; (2) he did not file any claim or commence any action which would trigger the State's right to recover; (3) he agreed to settle the third-party claim before the State paid or became obligated to pay any medical assistance, thus the State's right to recover was not triggered; and (4) the State is not entitled to recover insurance proceeds which were paid to him other than "medical costs."

## FACTS

Both parties filed motions for summary judgment. The material facts are undisputed. On April 30, 1985, Higley sustained serious personal injuries. He was sitting on a car. The driver suddenly drove the car away causing Higley to fall and strike his head on the pavement. Farmers Insurance Exchange ("Farmers") had issued a policy of motor vehicle insurance covering the car's owners and driver. The policy coverage limits were $5,000 first-party no-fault medical benefits and $20,000 for lia-

bility to third parties for personal injuries. Higley's medical bills amounted to more than $55,000. Farmers verbally offered to pay the $5,000 medical benefits, and $20,-000 personal injury liability policy limits immediately after the accident. Farmers' offer was confirmed by a letter addressed to Higley's parents dated May 31, 1985. Thereafter, Farmers paid $5,000 to Higley's medical care providers. No one filed an action against the car's owners or the driver, and no formal claim was filed with Farmers.

Higley and his parents applied to the State for medical assistance, i.e., payment of his medical expenses. The application form is entitled "application and affidavit for financial, medical assistance and food stamps." The application portion of the form is a basic income and asset financial statement of the family. The affidavit portion of the form contains a sworn oath stating that the information supplied is truthful, an assignment to the State of "all rights to benefits otherwise payable to me for medical services" and the following acknowledgment:

> If I have a right of recovery under an insurance policy or against a person who may be liable for the medical expenses, I have an obligation to the State of Utah for medical expenses paid on my or my dependents behalf by the Utah Department of Health.

The Higleys in their application did not mention Farmers' written offer to pay both the $5,000 medical payments and the $20,-000 personal injury coverage. The application was filed on June 10, 1985 and the State certified them as eligible for benefits on June 20, 1985. On October 30, 1985,

---

1. For discussion relating to whether the 1984 or 1989 version of the statute applies, *see infra* at pp. 437–438.

2. The Medical Benefits Recovery Act operates in tandem with the Medical Assistance Act § 26–18–9 to –11 (1989). Section 26–18–10, Utah Medical Assistance Program, provides in part:

   (1) The division shall develop a medical assistance program, which shall be known as the Utah Medical Assistance Program, for low income persons who are not eligible under

the state plan for Medicaid under Title XIX of the Social Security Act or Medicare under Title XVIII of that act. . . .
   (3) The department shall develop standards and administer policies relating to eligibility requirements for participation in the program, and for payment of medical claims for eligible persons.
   (4) The program shall be a payor of last resort. Before assistance is rendered the division shall investigate the availability of the resources of the spouse, father, mother, and adult children of the person making application.

Higley's father petitioned Third District Court to appoint him as Higley's conservator and to authorize him to receive the liability and no-fault proceeds pursuant to Farmers' offer. The trial court approved both the appointment and the settlement and thereafter the settlement was finalized. The conservator executed a release in full of all claims against the car's owners, the driver and Farmers. Farmers paid the $20,000 insurance proceeds to the conservator and the funds were deposited in a court-supervised account for the use and benefit of Higley.

On December 10, 1986, the State intervened in the prior trial court proceeding and filed a petition for payment of a claim to reimburse $55,000 medical assistance provided by the State to Higley's medical care providers. The State's petition was based on Utah Code Ann. § 26–19–1 to –18 (1989). On February 8, 1990, the trial court entered summary judgment ordering that the insurance funds in the conservator's possession be delivered to the State to apply on the medical assistance it had provided.

### ANALYSIS

■ The primary issue is whether the statute entitles the State to recover from Higley medical assistance payments advanced in his behalf. We must first examine the threshold issue regarding the 1989 amendments to the statute and particularly those made to section 26–19–7. The material facts in this case all occurred during 1985. At that time, section 26–19–7 provided:

(1)(a) A recipient may not file a claim or commence an action against a third party for recovery of medical costs for an injury, disease, or disability for which the department has provided or has become obligated to provide medical assistance without the department's written consent.

(b) The department has an unconditional right to intervene in an action commenced by a recipient for recovery of medical costs connected with the same injury, disease, or disability, for which it

has provided or has become obligated to provide medical assistance.

(2) If the recipient proceeds without the department's written consent as required by Subsection (1)(a), the department is not bound by any decision, judgment, agreement, or compromise rendered or made on the claim or in the action, and the department may recover in full from the recipient all medical assistance which it has provided and shall maintain its right to commence an independent action against the third party, subject to Subsection 26–19–5(3).

(3) The department's written consent, if given, shall state under what terms the interests of the department may be represented in an action commenced by the recipient....

Utah Code Ann. § 26–19–7 (1984). The 1989 version provides as follows in pertinent part, with our emphasis:

(1)(a) A recipient may not file a claim, commence an action, *or settle, compromise, release, or waive* a claim against a third party for recovery of medical costs for an injury, disease, or disability for which the department has provided or has become obligated to provide medical assistance without the department's written consent....

Utah Code Ann. § 26–19–7 (Supp.1990). Higley argues that the new words added in 1989 should not be applied retroactively. We considered this argument in *Camp v. Office of Recovery Services,* 779 P.2d 242, 246 n. 2 (Utah Ct.App.1989) and concluded that the legislature merely intended to clarify the statute in order to encompass all claim resolutions. The amendment was not substantive. Accordingly, we can apply the 1989 statutory amendment in this case. *See In re J.P.,* 648 P.2d 1364, 1369 n. 4 (Utah 1982).

■ Higley's second argument is that the statute does not apply to him because he did not file a claim with the insurance carrier or file an action against anyone. Since the 1989 amendments can be applied, his argument fails because he did "settle, compromise and release" his claim via the

insurance settlement which action triggered the State's right to pursue recovery.

■ Next, Higley argues that the insurance carrier's written offer dated May 31, 1985 to settle for the $25,000 policy limit pursuant to their prior conversation predates both his June 10, 1985 application for State assistance and the State's acceptance on June 20, 1985. Thus, he claims the statute does not apply to him because the State did not become "obligated" to assist him *before* he had agreed to settle his claim. But, his claim was not fully and legally settled until October 30, 1985, several months *after* the State became obligated.[3] At that point, the statute required Higley not to settle, compromise, release or waive a claim against a third party without the State's written consent. *See* Utah Code Ann. § 26–19–7(1)(a) (1989). He concluded settlement of the third-party claim without the necessary consent. Moreover, the State had "become obligated" on June 20, 1985 to provide medical assistance to him and did provide $55,000 of assistance pursuant to the statute. Accordingly, the State triggered its statutory right to recover.

■ Higley's final argument is that the $20,000 insurance proceeds did not constitute a recovery of "medical costs." Thus, he claims that these insurance proceeds are beyond the reach of the statute. He observes that this issue was not resolved in *Camp,* but his brief on this point does not cite us to the statute or any other legal authority. In any event, we believe Higley's argument is highly selective in using the language of the statute to support this rationale. Sections 26–19–5 and –7 cast the recovery statute in the context of its title—recovery of medical benefits, i.e., medical assistance provided by the State, not medical costs which are paid by a third party. Section 26–19–5 (Supp.1990) provides with our emphasis:

> (1) When the department provides or becomes obligated to provide *medical assistance* to a recipient because of an injury, disease, or disability for which a third party is liable, the department may recover the *medical assistance* directly from that third party. The department's claim to recover *medical assistance* provided as a result of such an injury, disease, or disability shall be a lien against *any proceeds payable to the recipient by that third party* ....

Accordingly, the statute authorizes the State to recover the medical assistance it has provided in a case where a third party is liable. Here, the owners and driver are third parties liable for the medical expenses incurred and Farmers was obligated to pay to Higley in their behalf the limits of its policy.[4] The statute says that the State's claim for recovery "shall be a lien against *any proceeds* payable to the recipient [Higley] by that third party." (Emphasis added.) Higley, as the recipient, had a claim for recovery against a liable third party. He pursued that claim without State consent, thus the State's claim against Higley included "any proceeds" payable by the third party to the extent of the State medical assistance provided to him. *Camp,* 779 P.2d at 246.·

---

**3.** At oral argument, the State conceded that the statute is not triggered when the applicant for medical assistance has already recovered on his or her third-party claim before the State became obligated to provide medical assistance. At that point, the applicant is required to report the proceeds as income or an asset on the application/affidavit form. Then, the State would take the amount of the recovery into account in determining the applicant's eligibility for medical assistance. The State has other remedies in the event the claim or recovery is not reported:

> The department may recover medical assistance incorrectly paid, whether due to administrative or factual error or fraud, from the recipient or his estate and may, pursuant to a judgment, impose a lien against the property of the recipient.

Utah Code Ann. § 26–19–13(5) (1989).

Civil and criminal penalties are also available to the State for false statement or representation relating to medical benefits. *See* §§ 26–20–3, –7, –9 and –9.5.

**4.** The definition of "third party" includes Higley's parents who by virtue of the parent-child relationship "may be liable to pay all or part of the medical costs of a recipient under law...." Utah Code Ann. § 26–19–2(5)(b)(i). Moreover, Higley and his parents are "recipient(s)" under the statute as the persons who applied for and received the medical assistance.

## CONCLUSION

The State became obligated to pay and did pay medical assistance in Higley's behalf. Higley proceeded to settle his claim against third parties without the State's consent. The trial court determined that Higley violated the requirements of the statute and that the State was entitled to recover from Higley the medical assistance provided. Since the amount of the assistance exceeded the amount of the insurance proceeds, the State's recovery necessarily included all the proceeds available to Higley under the liable parties' insurance policy. We give no deference to the trial court's ruling but we find no error requiring a different result. *Utah Restaurant Ass'n v. Salt Lake City–County Bd. of Health*, 771 P.2d 671, 673 (Utah Ct.App. 1989). On the undisputed material facts the statute applies and is controlling. *Camp*, 779 P.2d at 245.

Affirmed.

BENCH and RUSSON, JJ., concur.