**SENTRY INVESTIGATIONS, INC., Plaintiff and Appellant,**

v.

**Steven DAVIS, Defendant and Appellee.**

**No. 920031–CA.**

Court of Appeals of Utah.

Nov. 12, 1992.

Scott Phillips, Harris, Carter & Harrison, Provo, for plaintiff and appellant.

Steven Davis, pro se.

Before BENCH, BILLINGS and ORME, JJ.

## OPINION

ORME, Judge:

Plaintiff, Sentry Investigations, Inc., appeals from the trial court's judgment denying it recovery against defendant, Steven Davis. We affirm.

## FACTS

Shawnee Davis and defendant Steven Davis divorced in 1987. During their marriage, they had two children. When they divorced, custody of the two children was awarded to Shawnee Davis, the children's mother.

On January 16, 1989, Shawnee Davis sought medical treatment for the two minor children from Preferred Family Clinic, Sentry's assignor. Prior to obtaining the treatment, Shawnee Davis signed an agreement to be responsible for the costs of the medical care. Defendant was unaware that such medical care had been provided to his children until four or five days after the children had been admitted to the facility providing the treatment. He did not sign any agreement accepting responsibility for the medical care costs.

Upon Shawnee Davis's failure to pay for the children's medical treatment, Sentry brought this action. Sentry sought to recover from defendant the costs of the medical care provided to his children, alleging that the services provided were necessary and that, as the children's father, defendant was therefore obligated to pay for them.

The trial court ruled in favor of defendant on the ground that the Family Expense Statute, Utah Code Ann. § 30–2–9 (1992),[1] which charges both "husband and wife" with "family expenses," required an existing marital relationship in order to apply. Because Shawnee Davis and defendant were divorced prior to the children receiving the medical treatment, the trial court concluded that defendant could not be held liable for the medical treatment provided to his children under section 30–2–9.

On appeal, Sentry contends section 30–2–9 should be read broadly to include ex-husbands and ex-wives—indeed, even parents never married—in order to (1) reflect the current realities of the modern family and (2) support the strong public policy in favor of fathers financially supporting their children.

---

**1.** Section 30–2–9 provides:
The expenses of the family and the education of the children are chargeable upon the property of both husband and wife or of either of them, and in relation thereto they may be sued jointly or separately.

## ANALYSIS

We note that the record in this case contains no information as to the terms of the Davis divorce decree, what type of child support obligation was imposed on defendant, or which parent is responsible, under Utah Code Ann. § 30–3–5(1)(a), to pay the children's medical expenses. That section provides, with our emphasis:

(1) When a decree of divorce is rendered, the court may include in it equitable orders relating to the children, property, debts or obligations, and parties. The court *shall* include the following in every decree of divorce:

(a) an order assigning responsibility for the payment of reasonable and necessary medical and dental expenses of the dependent children.

Utah Code Ann. § 30–3–5(1)(a) (Supp.1992).

Sentry made no effort before the trial court to show what the divorce decree in this case required of the parties in contemplation of this provision. On appeal, Sentry argues that even if section 30–3–5(1)(a) requires a designation of responsibility for the children's medical expenses in the divorce decree, the Family Expense Statute, Utah Code Ann. § 30–2–9 (1992), although phrased in terms of "husband and wife," should be interpreted to impose an obligation on both parents which extends beyond the parents' status as husband and wife. We reject this contention for several reasons.

▪ First, any suggestion that the terms "husband" and "wife" were used by the Legislature unadvisedly is belied by a study of the statutory chapter as a whole. Concerning statutory interpretation, the Utah Supreme Court recently noted that "[w]e first look to the plain language of the statute as the best expression of legislative intent. In construing the statute, we follow the rule that the terms of a statute should not be interpreted in a piecemeal fashion, but as a whole." *Silver v. Utah State Tax Comm'n*, 820 P.2d 912, 914 (Utah 1991) (citations omitted). "[A] fundamental principle of statutory construction is that a statute should be construed as a whole, and its terms should be construed to be harmonious with each other and the overall objective of the statute." *Utah State Road Comm'n v. Friberg*, 687 P.2d 821, 831 (Utah 1984).

Applying this principle, we note that the entirety of Chapter 2 of Title 30 is given over, as its caption suggests, to the subject of property rights between married persons. For example, section 30–2–3, which provides that "[a] conveyance, transfer or lien executed by either husband or wife to or in favor of the other shall be valid to the same extent as between other persons," deals specifically with the effects of conveyances between married people. Utah Code Ann. § 30–2–3 (1989). Section 30–2–8, addressing agency between husband and wife, also illustrates the overall scheme of Chapter 2 as dealing only with the rights and obligations between married persons. *See* Utah Code Ann. § 30–2–8 (1989).

▪ Although the sections discussed above adequately illustrate the Legislature's intent to address Chapter 2 solely to married persons, exclusive reliance on the inferences drawn from the structure of Chapter 2 is unnecessary because section 30–2–5 recognizes the very distinction between married and unmarried persons that Sentry would have us ignore. That section discusses in detail the responsibility of spouses for each other's debts, both before and after marriage, and now provides in pertinent part: [2]

2. In 1991, the Legislature repealed and reenacted this section. *See* 1991 Laws of Utah, ch. 257, § 3. The version of this statute effective at the time the relevant medical services were provided was phrased as follows, with our emphasis:

Neither husband nor wife is liable for the debts or liabilities of the other incurred before marriage, and, *except as herein otherwise declared,* they are not liable for the debts of each other contracted after marriage; nor are the wages, earnings or property of either, or the rents or income of the property of either, liable for the separate debts of the other. Utah Code Ann. § 30–2–5 (1989). The 1991 amendment reorganized the portion of the former statute which provided that neither spouse is responsible for the debts of the other incurred after marriage "except as herein otherwise declared." The 1991 version provides, with our

(1) Neither spouse is personally liable for the separate debts, obligations, or liabilities of the other:

    (a) contracted or incurred before marriage;

    (b) contracted or incurred during marriage, *except family expenses as provided in Section 30–2–9;* [or]

    (c) contracted or incurred after divorce or an order for separate maintenance under this title....

Utah Code Ann. § 30–2–5(1) (Supp.1992) (emphasis added). Subsection (1)(b), applicable only to debts incurred during marriage, specifically contemplates section 30–2–9 by providing that neither spouse is responsible for the debts of the other, even while married, except "family expenses as provided in Section 30–2–9." At the same time, subsection (1)(c) specifically provides that one spouse is not liable for the debts of the other incurred after the parties have divorced, without any qualification for expenses of the sort contemplated in section 30–2–9. Taken together, these two subsections make it abundantly clear that the Family Expense Statute is applicable only in the context of an existing marital relationship.

Sentry relies upon two cases in support of its argument that the Family Expense Statute should be extended to apply to divorced non-custodial parents. In *Berrow v. Shields,* 48 Utah 270, 159 P. 538 (1916), a merchant sought to recover against Mr. Shields under 1907 Utah Comp.Laws § 1206[3] for funds Mrs. Shields spent on clothing after the parties were separated and living apart from one another. The Utah Supreme Court held that "[w]hen the statute refers to the expenses of the family it necessarily presupposes or assumes the existence of a family, and, further, that those who usually comprise a family are in fact sustaining that relation." *Id.* 159 P. at 540.

Although the *Berrow* case was decided in 1916, the case is consistent with our interpretation of section 30–2–9 in this case. While Sentry suggests we should overrule the case in favor of a broader application of the statute, we decline to do so for two reasons. First, any rejection of *Berrow*'s interpretation of the Family Expense Statute must come directly from the Utah Supreme Court. The Court of Appeals simply cannot overrule the law as announced by the highest court in the state, even if the announcement was made decades ago. Moreover, we think *Berrow* was correctly decided. Given the conspicuous placement of section 30–2–9 in Chapter 2 of Title 30, dealing expressly with property rights as between married persons, a broader reading of the section would run contrary to the explicit intention of the statute as a whole.

Insofar as Sentry contends the more recent case of *Gulley v. Gulley,* 570 P.2d 127 (Utah 1977), in effect validates its proposition and reverses *Berrow* sub silentio, Sentry goes too far. In *Gulley,* the court held a non-custodial father liable for public assistance provided to his children by the Department of Social Services. In so hold-

---

emphasis, that "[n]either spouse is personally liable for the separate debts, obligations, or liabilities of the other ... contracted or incurred during marriage, *except family expenses as provided in Section 30–2–9.*" Utah Code Ann. § 30–2–5(1)(b) (Supp.1992). As this court noted in *Matter of Estate of Higley,* 810 P.2d 436 (Utah App.1991), when an amendment to a statute is not substantive, the court may fairly read the new version of the statute as a mere clarification of the previous statute. *Id.* at 438. *See also In re J.P.,* 648 P.2d 1364, 1369–70 n. 4 (Utah 1982) ("[A] statute or amendment may be retroactively applied where it 'deals only with clarification or amplification as to how the law should have been understood prior to its enactment.'") (quoting *Okland Constr. Co. v. Industrial*

*Comm'n,* 520 P.2d 208, 210–11 (Utah 1974)); *Camp v. Office of Recovery Services,* 779 P.2d 242, 246 n. 2 (Utah App.1989) (court concluded that legislature merely intended to clarify statute, thus statute could be applied retroactively). Because it is apparent that the 1991 amendment to section 30–2–5 did not "alter the governing standard of the [section]," *In re J.P.,* 648 P.2d at 1370, but merely substituted a specific reference to section 30–2–9 for the general reference "except as otherwise herein declared," the 1991 version of section 30–2–5 may be fairly considered in this case.

**3.** Section 1206 was the predecessor of Utah Code Ann. § 30–2–9 (1989).

ing, the Utah Supreme Court observed that "[e]very parent has the duty to support the children he has brought into the world. This duty is inalienable and he cannot rid himself of it by purporting to transfer it to someone else, by contract or otherwise." [4] *Id.* at 128–29. Sentry relies on this statement, and the *Gulley* court's further observation that

> the just and logical consequence of the duty of parents to support their children is that if they are left in need and a third party provides them necessities, he is subrogated to the child's right and may obtain reimbursement therefor.

*Id.*

Sentry's reliance on *Gulley* is, however, misguided because in *Gulley*, the court clearly reasoned that recovery against the father for necessities provided to his children by a third party was permissible because the father's failure to pay on-going child support as specified in the divorce decree left the children "in need." *See Gulley*, 570 P.2d at 129. *See also id.* (Wilkins, J., dissenting) (pointing out that state's theory was that father had failed to pay child support "as *ordered in the decree*"). Moreover, the ex-husband's liability was limited to the amount of monthly child support which was specified in the decree. *See* 570 P.2d at 129. *Gulley*, then, has no application to cases involving a noncustodial parent's obligation to pay for necessities provided to his children, except as to parents who have not paid their child support as ordered.

In this case, Sentry never even addressed the extent of defendant's child support obligation. Nor does Sentry make any contention that defendant's child support obligation has not been fulfilled in accordance with the divorce decree. Thus, the principles enunciated in *Gulley* have no application to the present case.

**4.** In *Gulley,* the children's mother and father divorced, and the decree of divorce awarded custody of the parties' four children to their mother, together with $50 per month support for each child and $50 per month for alimony. After several years of making regular support

## CONCLUSION

For the foregoing reasons, the judgment appealed from is affirmed.

BENCH and BILLINGS, JJ., concur.

payments, the father entered into an agreement with the mother whereby he agreed to pay her $10,000, which was to be prepayment of *all* of his obligations under the decree, in return for release of those obligations. *See Gulley,* 570 P.2d at 128.